**In re LEHIGH COAL AND NAVIGATION COMPANY, Debtor.**

**Bankruptcy No. 5–08–bk–51957.**

United States Bankruptcy Court, M.D. Pennsylvania.

April 2, 2010.

Lawrence G. McMichael, Jennifer L. Maleski, Dilworth Paxson LLP, Philadelphia, PA, for Debtor.

## OPINION

JOHN J. THOMAS, Bankruptcy Judge.

Lehigh Coal and Navigation Company, Debtor, has filed a Motion authorizing sale as well as a request to approve bidding procedures. Objections to the bidding procedures have been filed, and, at the request of the Debtor, an expedited hearing was set and argument transpired. The Debtor has requested expedited disposition because of what is assumed to be the fragility of the Debtor's current situation.

The objections were filed by five entities including the United Mine Workers (in the form of a "limited answer"); Ciardi Advisory Services, as agent for a lending group; Primerock Capital, LLC, one of the investors in that lending group; the Committee of Unsecured Creditors; and Caterpillar Financial Services Corporation. While Ciardi withdrew its objection at the time of the hearing, it followed up with a limited reinstatement of its objection as a joinder to Primerock's objection. In fact, Primerock notified the Court by correspondence (Doc. # 1006) that components of their original objection were resolved.

As mentioned, the Debtor is in a precarious position with the distinct possibility that it may lose its principal assets at a state court sheriff's sale scheduled for mid-May, 2010. Without articulating it as such, the Debtor appears to have found a vehicle by which it can secure the services of an experienced marketeer, SSG Capital Advisors, in a manner that will be funded by a buyer (even if that buyer is a secured creditor) as opposed to the Debtor, which has no liquid funds.

■ The central challenge raised by Primerock Capital, LLC and Ciardi Advisory Services, LLC is whether the stalking horse bidder, BET Associates IV, LLC and BET Lehigh Real Estate, LLC has the right to credit bid obligations from the Debtor, free from the constraints of an investment agreement in which the bidder supposedly surrendered certain rights to act independent of the group.

■ In the recent Third Circuit Court of Appeals case of *In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (C.A.3 (Pa.)), the Court went some lengths to emphasize the import of the "plain meaning" rule in concluding that a Debtor can eliminate the "right" to credit bid as a part of a confirmed plan. 11 U.S.C. § 1129(b)(1). While acknowledging that the right to credit bid is not without limitations by virtue of the rather obvious proviso in § 363(k) that the right exists "unless the court for cause orders otherwise," the only cause enunciated at the hearing in this case was the agreement between non-debtors that certain benefits would be shared *pro rata*. See Exhibit to Doc. # 991. It is not the Debtor that is seeking to eliminate the ability to credit bid, but another investor in the credit facility as well as the agent for the investment group, Ciardi. That creditor, Primerock, cites to *In re Electroglas, Inc.*, (Delaware bankruptcy 09–12416) as authority to deny the creditor the right to credit bid by reason of limitations in the noteholders' agreement. The *Electroglas* opinion pays deference to the literal language of § 363(k),

but concludes that there was a likelihood of "confusion" should a noteholder act separate and apart from the group. Two points are to be taken from that case. First, the issue arose at the time of the hearing on the sale and not, as here, preliminary to the actual sale hearing. Second, no evidence has been introduced that there would be the least confusion should BET be the successful bidder. I note that the agency agreement in the case before me is replete with provisions that the investors would hold certain recoveries in trust for the group, suggesting that individual action was likely anticipated.

In short, the objectors did not suggest that the stalking horse is not qualified to bid as a holder of an allowed claim secured by a lien under § 363(k). Their argument is that individual action would subject that creditor to exposure to fellow noteholders.

On the assumption that BET is a holder of an allowed claim secured by a lien on the subject matter of the sale, I will follow the literal terms of the statute and approve the efforts of BET to credit bid.

It is a unique situation where a secured creditor bears the nomenclature of a stalking horse when, presumably, it could achieve a similar, and possibly less expensive disposition by simply setting an upset price at a state court creditor's sale. There are dynamics here that the Court certainly appreciates. Apart from the fragility of the Debtor's reorganizational efforts, unquestionably there exists significant environmental concerns that will saddle any new owner of the premises.

The outlook looks grim on a number of levels, albeit a debtor, creditor, or a societal perspective.

The hearing on the bidding procedure consisted solely of legal argument which constricts my ultimate findings.

I next address the Committee's objection. The Committee was lukewarm in advancing its arguments, one of which is easily resolved. First, the Committee objected to provisions that would close or limit information to a few participants. I appreciate this objection and would propose to issue an Order to open the proceedings to others upon application of an interested party and showing of cause.

The Committee objects to a required deposit, currently at $400,000, from potential bidders, the sales fee payable to the investment banker, and the initial bidding increment, now set at $200,000. Apart from a bald statement that these numbers were recommended by SSG, who was present and available to testify at the hearing, the Court has no evidence that such amounts are unreasonable.

In regard to the provision allowing expense reimbursement and the objections thereto, I am aware that it is Movant's (Debtor's) burden to demonstrate that expense reimbursement to the stalking horse is an "actual, necessary" expense of "preserving the estate." *In re Reliant Energy Channelview, LP*, 594 F.3d 200, 206 (3rd Cir.2010). I have been given no information to make that finding. In fact, this item appears to be of marginal concern to BET, as argued at the hearing. The expense appears to be a necessary expenditure by any proposed owner, including the lienholder, whether they be a bidder at sale, or a creditor foreclosing on an interest. In the absence of proof of necessity, that request for expense reimbursement is denied.

As to other elements of the bidding procedure, while the record is sparse, these elements appear to have the support of SSG, who is charged with "moving" this property in a short window. I see little reason to interfere with these details.

The issues addressed appear to dispose of all significant concerns raised by the objectors.

The Order that follows was submitted by the Debtor after extensive negotiations with the Objectors. To the extent that this Order conflicts with these findings and conclusions, these findings and conclusions will supersede the language of the Order.

### REVISED ORDER (I) APPROVING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) SCHEDULING AN AUCTION; (III) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (IV) APPROVING FORM OF NOTICE OF SALE

Upon Lehigh Coal and Navigation Company's (the "Debtor") Motion for an Order (i) approving procedures for the sale of substantially all of the Debtor's assets; (ii) scheduling an auction; (iii) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the sale; and (iv) approving the form of notice for the sale. (the "Motion")[1]; notice of the Motion being proper and sufficient and all interested parties having been afforded an opportunity to be heard with respect to the Motion; and upon review and consideration of the Motion and any objections thereto; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and other parties-in-interest:

IT IS HEREBY ORDERED THAT:

1. The Motion is approved in its entirety.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled except as otherwise set forth herein.

3. The Bid Procedures, substantially in the form attached hereto as *Addendum 1,* are approved and the Debtor is authorized to take any and all actions necessary and/or appropriate to implement the Bid Procedures.

4. As provided in the Bid Procedures, the Debtor shall conduct the Auction on May 24, 2010 at 10:00 a.m. prevailing Eastern Time at the offices of Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, Pennsylvania 19102.

5. The Assumption and Assignment Procedures, substantially in the form attached hereto as *Addendum 2,* are approved and the Debtor is authorized to take any and all actions necessary and/or appropriate to implement the Assumption & Assignment Procedures.

6. The form of Sale Notice attached hereto as *Addendum 3* is hereby approved as sufficient.

7. Within three (3) business days after entry of this Order, the Debtors: (a) shall publish notice of the Sale and the time and place of the proposed Auction in the National Edition of the Wall Street Journal and such other publications, including trade publications, as the Debtor and SSG Capital determine will promote the marketing and sale of the Purchased Assets; (b) shall provide a copy of the Sale Notice and this Order to (i) counsel to the Committee; (ii) the Office of the United States Trustee; (iii) counsel to the Debtor's secured creditors; (iv) counsel to the Penn-

---

1. Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

sylvania Department of Environmental Protection; and (v) those parties that request notice of all pleadings pursuant to Federal Rule of Bankruptcy Procedure 2002; (c) within seven (7) days after entry of this Order, SSG Capital Advisors, LLC shall provide a copy of the Sale Notice and this Order to any known prospective bidders at the Auction, including, but not limited to, those parties that have previously signed confidentiality agreements during the process by which the Debtor sought interested bidders for the Purchased Assets; and (d) within three (3) business days after entry of this Order, the Debtor shall serve the Sale Notice by first class mail on all known creditors of the Debtor.

8. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

9. Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

10. Upon closing of any Sale of the Debtor's assets in accordance with the Bid Procedures, the Sale Fee shall be paid by the Buyer to SSG Capital Advisors, LLC. The Sale Fee shall be $150,000 if the Assets are sold to the Stalking Horse. If the Assets are sold to any party other than the Stalking Horse, the Sale Fee shall be $250,000.

11. The Carve Out referenced in Paragraph 1 of the Seventh Amended Stipulation Regarding Use of Cash Collateral and Granting of Liens Pursuant to 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 4001, as it relates to the Toll

Parties, is hereby increased from $150,000 to $200,000.

12. This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the Bid Procedures and this Order. To the extent any provisions of this Order are inconsistent with the Motion, the terms of this Order shall control.

## ADDENDUM 1

*ADDENDUM 1 TO ORDER (I) APPROVING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) SCHEDULING AN AUCTION; (III) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (IV) APPROVING FORM OF NOTICE OF SALE*

### BID PROCEDURES

Set forth below is the general process to be employed by the Debtor with respect to the proposed Sale of all or substantially all of the Debtor's assets (the *"Purchased Assets "*), as contained in the Debtor's Motion for entry of an order: (i) approving procedures for the sale of substantially all of the Debtor's assets; (ii) scheduling an auction; (iii) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the sale; and (iv) approving the form of notice for the sale (the *"Motion "*) [1].

a. **Assets to Be Sold.** The Debtor is offering the Purchased Assets for sale pursuant to the Sale Motion. The Debtor shall retain all rights and title to assets that are not subject to a bid accepted by the Debtor and approved

---

1. Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

by the Bankruptcy Court at the Sale Hearing (as defined below). A Qualified Bidder (as defined below) may also submit a bid that includes assets of the Debtor that are not defined as Purchased Assets in the Stalking Horse Agreement (the "Other Assets" and, together with the Purchased Assets, the "Assets").

**b.** ***The Bidding Process.*** The Debtor, in conjunction with its advisors, shall: (i) determine whether any person is a Potential Bidder (as defined below); (ii) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Debtor's business; (iii) receive offers from Qualified Bidders (as defined below); and (iv) negotiate any offer made to purchase the Assets, together or separately (collectively, the "Bidding Process"). Neither the Debtor nor its representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets to any person who is not a Potential Bidder.

**c.** ***Participation Requirements.*** Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtor, in order to participate in the Bidding Process each person (a "Qualified Bidder") must submit a bid that adheres to the following requirements (a "Qualified Bid").

i. All Qualified Bids must be submitted to SSG Capital Advisors, LLC, Attn: J. Scott Victor, 300 Barr Harbor Drive, Suite 420, West Conshohocken, Pennsylvania 19428, with copies to Lawrence G. McMichael and Jennifer L. Maleski, Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, Pennsylvania 19102, not later than 5:00 p.m. (prevailing Eastern Time) on May 20, 2010 (the "Bid Deadline"). The Debtor shall immediately distribute by facsimile transmission, electronic mail, personal delivery or reliable overnight courier service a copy of each Bid received to counsel for (a) the USDA; (c) Ciardi Advisory Services; (d) the Anthracite Health and Welfare Fund; (e) the Pennsylvania Department of Environmental Protection; and (f) the Official Committee of Unsecured Creditors.

ii. All Qualified Bids shall be in the form of an offer letter from a person or persons that the Debtor deems financially able to consummate the purchase of the Assets, which letter states:

(a) that such Qualified Bidder offers to purchase some or all of the Assets upon the terms and conditions set forth in an executed asset purchase agreement (the "Proposed Agreement") (hard copy and an electronic version in Word format and blacklined against the Stalking Horse Agreement), together with its exhibits and schedules, including terms relating to price and the time of closing (the "Proposed Agreement");

(b) that such Qualified Bidder is prepared to consummate the transaction on or before June 7, 2010, following entry of an Order of the Bankruptcy Court granting the relief requested in the Sale Motion and approving the Sale to the Successful Bidder (the "Sale Approval Order");

(c) that such Qualified Bidder's offer is irrevocable until the earlier to occur of June 14, 2010 or two (2)

business days after the closing of the Sale of the Purchased Assets;

(d) the actual value of such Qualified Bidder's bid to the Debtor's estate;

(e) that such Qualified Bidder shall pay the $250,000 Sale Fee (as defined in the Engagement Letter) to SSG Capital Advisors, LLC at Closing; and

(f) which of the Debtor's unexpired leases and executory contracts are to be assumed in connection with the consummation of the Qualified Bidder's bid.

iii. All Qualified Bids shall be accompanied by a deposit into escrow with the Debtor of an amount equal to $400,000 (the "Good Faith Deposit").

iv. All Qualified Bids shall be accompanied by satisfactory evidence, in the opinion of the Debtor and its advisors, of committed financing or other ability to perform all transactions contemplated by the Proposed Agreement, including but not limited to the ability to meet the requirements of the Pennsylvania Department of Environmental Protection for the transfer of the Debtor's mining permit and assumption of the Debtor's business operations.

v. All Qualified Bids must provide for proposed aggregate consideration to be paid to or for the benefit of the Debtor's estate in excess of $200,000 of the consideration set forth in the Stalking Horse Agreement.

vi. In accordance with Local Bankruptcy Rule 6004–4(c), all Qualified Bids must identify any agreements between the respective Qualified Bidder and the Debtor's current management or key employees regarding compensation or future employment.

vii. Qualified Bids cannot contain any financing conditions or contingencies (other than those set forth in the Stalking Horse Agreement).

d. *Due Diligence.* The Debtor shall afford each Potential Bidder (as defined below) due diligence access to the Purchased Assets. Due diligence access may include management presentations as may be scheduled by the Debtor, access to data rooms, on site inspections and such other matters which a Potential Bidder may request and as to which the Debtor, in its sole discretion, may agree. Neither the Debtor nor any of its affiliates (nor any of its representatives) are obligated to furnish any information relating to the Purchased Assets to any person except to Potential Bidders. Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Assets provided by anyone other than the Debtor or its representatives. To be a "Potential Bidder," each bidder must have delivered the following:

i. an executed confidentiality agreement in form and substance satisfactory to the Debtor; and

ii. current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited and unaudited financial statements or other financial information of the Potential Bidder's equity holder or other financial backer, or such other form of financial disclosure and evidence

acceptable to the Debtor and its advisors in its sole discretion, demonstrating such Potential Bidder's ability to close the proposed transaction, to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Debtor and assigned to the Potential Bidder.

e. *"As Is, Where Is."* The Sale of the Purchased Assets or the Assets shall be on an "as is, where is" basis ad without representations or warranties of any kind, nature, or description by the Debtor, its agents or estate, except to the extent set forth in the Proposed Agreement of the Successful Bidder. Except as otherwise provided in the Proposed Agreement, all of the Debtor's rights, title and interest in and to the Purchased Assets to be acquired shall be sold pursuant to the Sale and the Sale Order free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against (collectively, the "Transferred Liens"). Each bidder shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Purchased Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection with the Purchased Assets, the Bidding Process or the Auction, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, in the applicable Proposed Agreement.

f. *Stalking Horse.* The Stalking Horse has submitted a Qualified Bid pursuant to the Stalking Horse Agreement, which Qualified Bid shall serve as a stalking horse bid (the "Stalking Horse Bid").

g. *Stalking Horse Bid Protections.* The Debtor hereby seeks court authority to (i) provide expense reimbursement in an amount equal to all of the out-of-pocket expenses incurred by the Stalking Horse in connection with the transactions contemplated by the Stalking Horse Agreement up to a maximum of $183,000, payable to the Stalking Horse upon consummation of a sale to a third party bidder; and (ii) provide that any competing Qualified Bids must exceed the aggregate consideration to be paid to or for the benefit of the Debtor's estate as set forth in the Stalking Horse Bid by at least $200,000.

h. *Auction.* If the Debtor receives more than one Qualified Bid prior to the Bid Deadline, the Debtor shall conduct an auction (the "Auction") at the offices of Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, Pennsylvania on May 24, 2010, beginning at 10:00 a.m. (prevailing Eastern Standard Time) or such later time or other places as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. In accordance with Local Bankruptcy Rule 6004-3, all bidding must take place outside of the presence of the Bankruptcy Court. Only representatives of the Stalking Horse, the Debtor, the United States Trustee, the Committee, Ciardi Advisory Ser-

vices, LLC, the Anthracite Health and Welfare Fund, the Pennsylvania Department of Environmental Protection, Primerock Capital, LLC and any Qualified Bidders who have timely submitted Qualified Bids shall be entitled to attend the Auction. The Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.,* the amount of time allotted to make subsequent overbids) for conducting the Auction, so long as such rules are not inconsistent with these Bidding Procedures. Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtor determines is relevant, the Debtor, in its sole discretion, may conduct the Auction in the manner it determines will achieve the maximum value for the Purchased Assets. At the Auction, the minimum initial bid against the Stalking Horse Bid must exceed the value of the Stalking Horse Bid by $200,000. Subsequent bids shall be made in minimum increments of $100,000.

As soon as practicable after the conclusion of the Auction, the Debtor shall: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale; and (ii) identify the highest or otherwise best offer or combination of offers for the Assets and any second-highest offer (the "Successful Bid"). The Debtor will present the Successful Bid to the Bankruptcy Court for approval at the Final Sale Hearing. The Debtor reserves all rights to not submit any bid which is not acceptable to the Debtor.

i. ***Acceptance of Qualified Bids.*** The Debtor shall sell the Purchased Assets to the Stalking Horse or the Assets to the Successful Bidder, as the case may be, submitting the highest or otherwise best Qualified Bid at the Auction, after approval of such Qualified Bid by the Bankruptcy Court at the Final Sale Hearing. The Debtor's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor shall have accepted a Qualified Bid only when that Qualified Bid has been approved by the Bankruptcy Court at a Final Sale Hearing.

j. ***The Final Sale Hearing.*** After the conclusion of the Auction, the Bankruptcy Court shall conduct a hearing (the "Final Sale Hearing") on [May 26, 2010]. At the Final Sale Hearing, the Debtor will seek entry of an order (the "Sale Order"), among other things: (i) authorizing and approving the Sale to the Successful Bidder(s), as determined by the Debtor in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Proposed Agreement(s) submitted by the Successful Bidder(s) (as such Proposed Agreement may be modified prior to, during or after the Auction with the agreement of the Debtor); and (ii) as appropriate, exempting the sale and conveyance of the Purchased Assets from any transfer tax, stamp tax or similar tax.[2] The Final Sale Hearing may be

**2.** The Stalking Horse believes that a transfer tax exemption is available under state law with respect to a sale of the Debtor's real estate to the Stalking Horse, as the mortgagee under the DIP Financing Transaction. The Debtor does not believe that this tax exemp-

adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court.

Following the entry of the Sale Order approving the Sale, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid(s), as disclosed at the Final Sale Hearing, shall be deemed to be the Successful Bid(s) and the Debtor shall be authorized to effectuate such sale without further order of the Bankruptcy Court.

k. **Return of Good Faith Deposit.** All Qualified Bids will remain open and irrevocable, notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of a Successful Bid by a Qualified Bidder, until the earliest to occur of June 14, 2010 or two (2) business days after the closing of the Sale of the Purchased Assets. The Good Faith Deposits of all Qualified Bidders other than the Successful Bidder and the second-highest bidder, as determined by the Debtor, shall be returned to the respective Qualified Bidder within three business days after completion of the Final Sale Hearing. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such Successful

Bidder, which shall be retained by the Debtor as liquidated damages.

l. **Modifications.** The Debtor may: (i) determine, in its business judgment, which Qualified Bid, if any, is the highest or otherwise best offer; (ii) consult with the representatives of the Committee or other significant constituent in connection with the bidding process and Bid Procedures; and (iii) reject at any time before entry of the Sale Order approving a Qualified Bid, any bid that, in the Debtor's sole discretion, is: (x) inadequate or insufficient; (y) not in conformity with the requirements of the Bankruptcy Code; or (z) contrary to the best interests of the Debtor, its estates, its creditors and other parties-in-interest. At or before the Final Sale Hearing, the Bankruptcy Court, or, consistent with the purposes of the Bid Procedures to obtain the highest or otherwise best offer(s) for the Assets, the Debtor may impose such other terms and conditions as it may determine to be in the best interests of the Debtor's estate, its creditors and other parties-in-interest.

m. **Reservation of Rights.** In addition to the rights set forth above, the Debtor may modify these Bid Procedures or impose, at or prior to the Auction, additional terms and conditions on the proposed Sale of the Purchased Assets if, in its reasonable judgment, such modifications would be in the best interests of the Debtor's estate and promote an open and fair sale process.

tion would be available to a cash bidder at the Auction.

## ADDENDUM 2

*ADDENDUM 2 TO ORDER (I) AP-
PROVING PROCEDURES FOR
THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS;
(II) SCHEDULING AN AUCTION;
(HI) APPROVING PROCEDURES
FOR ASSUMPTION AND ASSIGN-
MENT OF EXECUTORY CON-
TRACTS AND UNEXPIRED LEAS-
ES IN CONNECTION WITH THE
SALE; AND (IV) APPROVING
FORM OF NOTICE OF SALE*

### *ASSUMPTION AND ASSIGNMENT PROCEDURES*

Set forth below are the assumption and assignment procedures (the *"Assumption and Assignment Procedures"*) to be employed with respect to the proposed Sale contemplated by the Debtor as contained in the Debtor's Motion for entry of an order: (i) approving procedures for the sale of substantially all of the Debtor's assets; (ii) scheduling an auction; (iii) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the sale; and (iv) approving the form of notice for the sale (the *"Motion"*) [1]

a. Within five (5) days prior to the Bid Deadline, the Debtor shall file a schedule of cure obligations (the "Contract and Cure Schedule") listing all unexpired leases and executory contracts that the Stalking Horse intends to assume (the "Assigned Contracts") and the amount, if any, that the Debtor contends is the amount needed to pay to cure any defaults which respect to such As-

signed Contracts (the "Cure Amounts").

b. Upon filing, a copy of the Contract and Cure Schedule and these Assumption and Assignment Procedures will be served on each of the counterparties to the Assigned Contracts listed on the Contract and Cure Schedule.

c. The Debtor shall amend the Contract and Cure Schedule promptly after the completion of the Auction to update the information contained therein with respect to the Successful Bid(s), and shall serve an amended Contract and Cure Schedule on each of the counterparties to the Assigned Contracts listed thereon.

d. Any objections ("Assignment Objections") to the assumption and assignment of any Assigned Contract, including but not limited to objections relating to adequate assurance of future performance or to the cure amount set forth in the Contract and Cure Schedule must be filed with the Bankruptcy Court and served upon the Notice Parties on or before 4:00 p.m. prevailing Eastern Standard Time on the May 25, 2010 (the "Assignment Objection Deadline").

e. Any counterparty failing to file an Assignment Objection by the Assignment Objection Deadline shall be forever barred from: (i) objecting to the Cure Amount set forth on the Contract and Cure Schedule with respect to its Assigned Contract; (ii)

---

1. Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

seeking additional amounts arising under its Assigned Contract prior to the Closing from the Debtors or the Successful Bidder; and (iii) objecting to the assumption and assignment of its Assigned Contract to the Successful Bidder.

f. Any Assignment Objection not consensually resolved prior to the Final Sale Hearing shall be heard at the Final Sale Hearing with any related Cure Amount or adequate assurance of future performance being fixed by the Bankruptcy Court. All other objections to the proposed assumption and assignment of the Assigned Contracts will be heard at the Final Sale Hearing.

g. Except as may otherwise be agreed to by all parties to an Assigned Contract, on or before the Closing, the cure of any defaults under Assigned Contracts necessary to permit assumption and assignment thereof shall be by: (i) payment of the undisputed Cure Amount; and/or (ii) establishment of a reserve with respect to any disputed Cure Amount. The party responsible for paying the Cure Amount shall be as set forth in the Proposed Agreement between the Successful Bidder and the Seller.

1. Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

*ADDENDUM 3 TO ORDER (I) APPROVING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) SCHEDULING AN AUCTION; (III) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE; AND (IV) APPROVING FORM OF NOTICE OF SALE*

*NOTICE OF BID DEADLINE AND AUCTION IN CONNECTION WITH THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS*

**PLEASE TAKE NOTICE** that, on March 11, 2010 Lehigh Coal and Navigation Company (the "Debtor"), whose corporate headquarters are located at 101 North Centre Street, Suite 500, Pottsville, PA 17901, filed a motion (the *"Motion"*) [1] seeking approval of, among other things (A) auction and bidding procedures (the "Bid Procedures") in connection with the sale (the "Sale") of substantially all of its business assets (the *"Assets"*); (B) procedures to determine cure amounts and deadlines for objections with respect to certain executory contracts and unexpired leases proposed to be assumed and assigned by the Debtor; and (C) related relief with the United States Bankruptcy Court for the Middle District of Pennsylvania (the *"Bankruptcy Court"*). By order dated _____ \_\_\_\_\_, 2010, the

Bankruptcy Court approved the Bid Procedures attached as *Addendum 1* to the Bid Procedures Order (the *"Bid Procedures Order"*).

**PLEASE TAKE FURTHER NOTICE** that, all interested parties are invited to submit a Qualified Bid and to make offers to purchase the Assets in accordance with the terms of the Bid Procedures and the Bid Procedures Order. The deadline to submit bids (the *"Bid Deadline"*) is **DATE at TIME p.m. (prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures Order, a copy of which is attached hereto, the Debtor intends to conduct an auction (the *"Auction"*) for the sale of the Assets at the offices of **Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, Pennsylvania on May 24, 2010** beginning at **10:00 a.m.** (prevailing Eastern Time), or at such other place and time as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. The Debtor proposed to sell substantially all of its business assets. More information about the sale and the Debtor's business, including descriptions of the assets to be sold and arrangements for a site visit of the Debtor's property, may be obtained by contacting J. Scott Victor at SSG Capital Advisors, LLC at 300 Barr Harbor Drive, Suite 420, West Conshohocken, Pennsylvania 19428. Any inquiries regarding the Sale should be directed to the Debtor's counsel or SSG Capital Advisors, LLC. Inquiries regarding the Sale should *not* be directed to the Clerk.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors intend to seek the Bankruptcy Court's approval of the Sale of the Assets at a hearing (the "Final Sale Hearing") which will be held before the Honorable John J. Thomas, at the United States Bankruptcy Court for the Middle District of Pennsylvania, Courtroom 2, 274 Max Rosenn U.S. Courthouse, 197 South Main Street, Wilkes–Barre, PA 18701 at 10:30 a.m. (prevailing Eastern Time) on Thursday, May 27, 2010.

**PLEASE TAKE FURTHER NOTICE** that, at the Final Sale Hearing, the Bankruptcy Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of this Chapter 11 case. Objections, if any, to the Sale of the Assets pursuant to the terms of the agreement reached between the Debtors and the Successful Bidder shall: (1) be in writing; (2) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Middle District of Pennsylvania; (3) set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtor's estate or properties, the basis for the objection and the specific grounds therefor; (4) shall be filed with the Clerk of the United States Bankruptcy Court for the Middle District of Pennsylvania, 274 Max Rosenn U.S. Courthouse, 197 South Main Street, Wilkes–Barre, PA 18701, on or before **5:00 p.m. (prevailing Eastern Time) on May 25, 2010,** or such later date and time as the Debtor may agree; and (5) be served so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on the same day upon (a) Lawrence G. McMichael, Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, PA 19102, counsel to the Debtor; (b)the Office of the United States Trustee; (c) Jeffrey A. Kurtzman, Klehr, Harrison, Harvey, Branzburg & Ellers, 1835 Market Street, Suite 1400, Philadelphia, PA 19103, counsel to the Stalking Horse; and (d) Jonathan

D. Demmy, Stevens & Lee, P.C., 1105 North Market Street, 7th Floor, Wilmington, DE 19801, counsel for the Committee.

**PLEASE TAKE FURTHER NOTICE** that, this Notice is subject to the complete terms and conditions of the Motion, the Bid Procedures and the Bid Procedures Order, which shall control in the event of any conflict, and the Debtor encourages parties-in-interest to review such documents in their entirety. Copies of these pleadings may be obtained by written request to counsel to the Debtor, c/o Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, PA 19102, Attn: Jennifer L. Maleski. In addition, copies of the aforementioned pleadings are on file with the Bankruptcy Court and available for inspection during regular business hours at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Middle District of Pennsylvania, 274 Max Rosenn U.S. Courthouse, 197 South Main Street, Wilkes–Barre, PA 18701.

*EXHIBIT B* \*

*[STALKING HORSE AGREEMENT]*

---

\* As the final terms of the Stalking Horse Agreement continue to be negotiated, the terms of Exhibit B are subject to change. The Final Stalking Horse Agreement will be filed with the Court as soon as practicable once it has been finalized.